# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EASTON TECHNICAL PRODUCTS, INC. )<br>a Utah corporation, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>FERADYNE OUTDOORS, LLC, )<br>a Delaware corporation, )<br>)<br>    Defendant. ) | Civil Action No. 18-1222-RGA |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Presently before the court in this patent infringement action are a motion for judgment on the pleadings seeking dismissal of the inequitable conduct counterclaim and a motion to strike defendant FeraDyne Outdoors, LLC's ("FeraDyne") inequitable conduct affirmative defense, pursuant to Federal Rules of Civil Procedure 12(c) and 12(f) filed by plaintiff Easton Technical Products, Inc. ("Easton"). (D.I. 16) For the reasons that follow, I recommend that the court grant Easton's motions.[1]

### II. BACKGROUND

On August 9, 2018, Easton originally filed this patent infringement action against FeraDyne, alleging infringement of United States Patent Numbers 7,004,859 ("the '859 patent"), 7,270,618 ("the '618 patent"), 7,374,504 ("the '504 patent"), and 7,608,001 ("the '001 patent")

---

[1] The briefing for the present motion is as follows: plaintiff's opening brief (D.I. 17), defendant's answering brief (D.I. 21), and plaintiff's reply brief (D.I. 22).

(collectively, the "Patents-in-Suit"), which relate to small diameter hunting arrows.[2] (D.I. 1 at ¶¶ 8-12) Easton is the owner by assignment of the Patents-in-Suit. (*Id.* at ¶¶ 9-12)

On October 29, 2018, FeraDyne filed its answer to Easton's complaint, and asserted an inequitable conduct counterclaim (the "Third Counterclaim") and related affirmative defense (the "Ninth Affirmative Defense"). (D.I. 8 at ¶¶ 25-40, 58-64) In its counterclaim, FeraDyne asserted that on August 23, 2006, Mr. Teddy D. Palomaki ("Mr. Palomaki"), Vice President of Product Development for Easton,[3] submitted a declaration to the United States Patent and Trademark Office ("USPTO") pursuant to 37 C.F.R. § 1.132, representing that "Figure 12 of the above-referenced patent application illustrates that the arrow shaft of this invention is new and unique in its combination of spine and outside diameter." (D.I. 8 at ¶ 26) FeraDyne contends that, based on this statement, Mr. Palomaki did not disclose five prior art references, including: (1) U.S. Patent No. 4,234,190 ("the '190 patent"), (2) U.S. Patent No. 6,554,725 ("the '725 patent"), (3) Eastman's Medallion carbon arrow shafts ("Eastman Medallion arrow shafts"), (4) AFC arrow shafts,[4] and (5) the 1991 Lancaster Archery Supply Catalog[5] (the "Supply Catalog"). (D.I. 8 at ¶¶ 25-40) FeraDyne argues that Mr. Palomaki and Easton engaged in inequitable conduct in failing to disclose this prior art. (D.I. 8 at ¶¶ 25-40; D.I. 21 at 6)

---

[2] Easton claims that the Patents-in-Suit distinguish hunting arrows from other types of arrows. (D.I. 17 at 19 n.7)
[3] Mr. Palomaki is also the inventor of the Patents-in-Suit. (D.I. 1, Ex. A; Ex. B; Ex. C; Ex. D)
[4] FeraDyne specifies that arrow shafts made by a third-party company, AFC, include the following six products: (1) AFC XL Accel 2300, (2) AFC Pape's Advantage 2400, (3) AFC Max II 2400, (4) AFC Accel 2200, (5) AFC V-Max 2400, and (6) AFC Accel 2400. (D.I. 8 at ¶ 48; D.I. 21 at 4)
[5] FeraDyne alleges that "Mr. Palomaki and Easton knew of Easton's A/C/C Arrow Shafts *and* the 1991 Lancaster Archery Supply Catalog that marketed Easton's A/C/C Arrow Shafts, but affirmatively withheld this prior art information from the examiner and from the [PTO]." (D.I. 8 at ¶ 28) (emphasis added)

2

On November 19, 2018, Easton filed an answer to FeraDyne's counterclaims. (D.I. 12) On December 20, 2018, Easton filed the present motion for judgment on the pleadings and motion to strike FeraDyne's inequitable conduct counterclaims and defense. (D.I. 16)

## III. LEGAL STANDARD

### a. Motion for Judgment on the Pleadings

Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When deciding a Rule 12(c) motion for judgment on the pleadings based on an allegation that the plaintiff has failed to state a claim, the motion "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 995, 178 L.Ed.2d 825 (Jan. 18, 2011).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Under this standard, the court must accept all well-pleaded factual allegations as true, and must draw all reasonable inferences in favor of the non-moving party. *See Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). This determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### b. Motion to Strike

Rule 12(f) permits "[t]he court [to] strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "When ruling on a motion to strike, the [c]ourt must construe all facts in favor of the nonmoving party and deny the motion if the defense is sufficient under the law. Further, a court should not grant a motion to strike a defense unless the insufficiency of the defense is clearly apparent." *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 (D. Del. 2009) (internal citations and quotation marks omitted). "As a general matter, motions to strike under Rule 12(f) are disfavored." *Fesnak & Assocs., LLP v. U.S. Bank Nat'l Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010).

## IV. DISCUSSION

### a. Motion for Judgment on the Pleadings

The court recommends granting Easton's motion for judgment on the pleadings because FeraDyne's counterclaim for inequitable conduct fails to adequately plead the factual basis with the requisite particularity under Rule 9(b). Rule 9(b) requires a party, when "alleging fraud or mistake . . . [to] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When a party claims a patent is unenforceable, and the claim is "premised upon inequitable conduct, [it] is a claim sounding in fraud." *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 305 (D. Del. 2013). "'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). To plead inequitable conduct "with the requisite particularity under Rule 9(b), the pleading must identify the specific

who, what, when, where, and how of the material misrepresentation or omission committed before the [USPTO]." *Senju Pharm. Co.*, 921 F. Supp. 2d at 306 (quoting *Exergen Corp.*, 575 F.3d at 1328); *see Int'l Bus. Mach. Corp. v. Priceline Grp. Inc.*, C.A. No. 15-137-LPS-CJB, 2017 WL 1349175, at *4-5 (D. Del. Apr. 10, 2017). In addition,

> although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen Corp.*, 575 F.3d at 1328-29.

Easton argues the court should grant the motion for judgment on the pleadings and motion to strike because FeraDyne has not met the heightened pleading requirements of Rule 9(b) by identifying the "who, what, when, where and how," and has not pleaded any facts to support a finding of but-for materiality or to support an intent to deceive the USPTO. (D.I. 17 at 6-16) In response, FeraDyne argues that it has appropriately pleaded the "who, what, when, where, and how" of Mr. Palomaki's inequitable conduct. (D.I. 21 at 6) Furthermore, FeraDyne contends that it has met the but-for requirement by alleging upon information and belief that the patent examiner would "not have allowed the claims that are at issue in this litigation had it been aware of this undisclosed prior art." (D.I. 8 at ¶ 38)

Turning now to FeraDyne's pleading, the court analyzes the "particularity of the facts alleged and the reasonableness of the inference of scienter." *Exergen Corp.*, 575 F.3d at 1329.

### i. Analysis of Factual Support

The pleading identifies the "who" of the misrepresentation as "Mr. Palomaki and Easton." (*Id.* at ¶¶ 26-40) The Federal Circuit has held that a pleading must name a specific individual associated with the patent application to satisfy the specificity required to plead the

5

"who" of the misrepresentation. *See Exergen Corp.*, 575 F.3d at 1329. This ruling is consistent with cases in this district finding adequate identification of the "who" when the pleading specifically identifies individuals by name who were associated with the patent application. *See Andrulis Pharm. Corp. v. Celgene Corp.*, C.A. No. 13-1644-RGA, 2015 WL 4366118, at *4 (D. Del. July 16, 2015); *see Wyeth Holdings Corp. v. Sandoz, Inc.*, C.A. No. 09-955-LPS-CJB, 2012 WL 600715, at *9 (D. Del. Feb. 3, 2012) (finding that listing three specific individuals by name met the pleading standard for "who"). However, "[t]he duty of candor and good faith in dealing with the PTO applies to individuals, not organizations." *Senju Pharm. Co.*, 921 F. Supp. 2d at 307. Aside from Mr. Palomaki, FeraDyne does not allege that any specific Easton individual acted with intent to deceive the USPTO by not disclosing prior art. (*See* D.I. 8 at ¶¶ 25-40) Therefore, while FeraDyne's reference to Mr. Palomaki is sufficient to satisfy the "who" component of the pleading standard, its identification of Easton as an entity is insufficient.

Next, the pleading does not adequately identify the "what" of the misrepresentation. FeraDyne alleges that Mr. Palomaki failed to disclose: "the '190 Patent, the '725 Patent, Eastman's Medallion Arrow Shafts, and AFC's Arrow Shafts." (D.I. 8 at ¶ 29) However, FeraDyne fails to identify any specific claims or limitations in the '190 patent or the '725 patent.[6] *See Exergen Corp.*, 575 F.3d at 1329 (finding that the pleading did not sufficiently identify the "what" because it did not disclose specific claim language or claim numbers to

---

[6] Easton argues that Easton arrow shafts have an aluminum tube core and the '725 patent specifies a wood core. (D.I. 17 at 16) Therefore, Easton concludes, this prior art is not "fiber reinforced polymer (FRP)" as specified in the patents in suit. (*Id.*) However, this argument is inappropriate at this stage in the proceedings, where the court accepts as true all factual allegations in the pleadings. *See Senju Pharm. Co.*, 921 F. Supp. 2d at 301, 305-06 & n.13; *Zadro Prods., Inc. v. SDI Techs., Inc.*, C.A. No. 17-1406 (WCB), 2019 WL 1100470, at *1 (D. Del. Mar. 8, 2019).

6

establish the materiality of the omitted prior art references to the patents-in-suit). Therefore, the pleading does not meaningfully identify the omitted prior art.

The pleading adequately asserts the "when" of the misrepresentation with respect to the undisclosed prior art references. *See Wyeth Holdings Corp.*, 2012 WL 600715, at *9 (finding that the "when" implicates the date of the declaration submission); *Aerocrine AB v. Apieron Inc.*, C.A. No. 08-787-LPS, 2010 WL 1225090, at *9-10 (D. Del. Mar. 30, 2010) (finding the pleading identified the "when" for two different patents by listing the date "when the inventors became aware of the alleged[ ] prior art," for one, and listing the publication date of the prior art, for the other). Here, FeraDyne alleges that "[o]n or about August 23, 2006," Mr. Palomaki submitted his declaration that failed to disclose certain prior art. (D.I. 8 at ¶ 26)

However, the pleading fails to satisfy the "where" of the misrepresentation because it does not identify a single allegedly withheld prior art reference with specificity, let alone explain where in the withheld prior art references the information material to the Patents-in-Suit can be found. (*See* D.I. 8 at ¶ 29) Instead, FeraDyne relies on the outside diameter, spine measurement, and weight only as to Easton's A/C/C Arrow Shafts ("Easton arrow shafts").[7] (D.I. 8 at ¶ 34) Similarly, the Federal Circuit in *Exergen Corp.* found the pleading failed to satisfy the "where" because the pleading did not identify "where in [the withheld references] the material information is found." *Exergen Corp.*, 575 F.3d at 1329; *see also Wyeth Holdings Corp.*, 2012 WL 600715, at *9; *Aerocrine AB*, 2010 WL 1225090, at *9-10 (finding the pleading satisfies "where" when it states "where in the prior art the allegedly material information is found").

---

[7] FeraDyne argues in its brief that Figure 12 in the '618 patent is key to the infringement analysis. (D.I. 21 at 2; '618 patent, col. 15:37-50) The important dimensions of the arrow shafts are outside diameter and "spine." (D.I. 21 at 2) Thus, the five prior art references purportedly addressing such dimensions and characteristics are arguably material.

The pleading also fails to address the "how" factor. FeraDyne asserts that "[t]he prior art that Mr. Palomaki and Easton knew of, but affirmatively withheld from the examiner and the [USPTO], directly impacts at least claim 1 of the '859 Patent, claim 60 of the '618 Patent, claim 1 of the '504 Patent, and claim 1 of the '001 Patent." (D.I. 8 at ¶ 37) However, FeraDyne fails to allege with the requisite specificity how a reasonable examiner would use the omitted prior art references in determining the patentability of the Patents-in-Suit. *See Exergen Corp.*, 575 F.3d at 1329-30; *Wyeth Holdings Corp.*, 2012 WL 600715, at *9; *Aerocrine AB*, 2010 WL 1225090, at *9-10.

Moreover, FeraDyne's pleading does not include sufficient factual allegations to support a reasonable inference of but-for materiality. A misrepresentation is material if the USPTO would not have issued the patent but for the misrepresentation. *See Leo Pharma A/S v. Actavis Labs. UT, Inc.*, C.A. No. 16-333-JFB-SRF, 2018 WL 1045816, at *5 (D. Del. Feb. 26, 2018). In *Quest Integrity*, the court concluded that that pleading satisfied this standard by alleging the patented "invention was not new, was obvious from existing technology, and had been sold before the bar date." *Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, C.A. No. 14-1482-SLR, C.A. No. 14-1483-SLR, 2015 WL 4477700, at *4 (D. Del. July 22, 2015). In *Andrulis*, the court found the pleading satisfied the but for materiality standard by identifying "the conclusion by the researchers . . . [and the] plaintiff's omission of that conclusion and representation that the interim results instead showed an enhanced effect, on which the examiner relied in deciding to issue the . . . patent." *Andrulis Pharm. Corp.*, 2015 WL 4366118, at *5.

Here, FeraDyne's counterclaim states " [t]he information contained in the prior art concealed by Mr. Palomaki and Easton was material and not cumulative to the information already of record." (D.I. 8 at ¶ 30) This general statement does not identify the particular claim

limitations, or combination of claim limitations, that are supposedly absent from the information of record. "Such allegations are necessary to explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen Corp.*, 575 F.3d at 1329-30. Furthermore, FeraDyne alleges that Mr. Palomaki's statement occurred on August 23, 2006, which was six months after the date of the '859 patent's issuance. Therefore, it could not have impacted the USPTO's decision as to the '859 patent. (D.I. 8 at ¶ 26; D.I. 17, Ex. A) *See also SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 379 (Fed. Cir. 1983) ("The acts which are alleged to have taken place all occurred after the '762 patent issued . . . . Therefore, the enforceability of the '762 patent is unaffected.").

Additionally, Easton alleges that each of the Patents-in-Suit lists a 1998 Game Tracker Catalog (the "Game Tracker Catalog") in the "other publications" section which was considered by the patent examiner.[8] (D.I. 17 at 11) Easton argues that the Game Tracker Catalog included three of the six arrow shafts that constitute FeraDyne's AFC arrow shaft reference, and FeraDyne has failed to allege that the remaining three models of AFC arrow shafts are noncumulative of the AFC models considered by the USPTO.[9] (*Id.* at 13-14) In response, FeraDyne argues that it is inappropriate at this stage in the proceedings to decide whether or not the three non-disclosed AFC arrow shafts were cumulative. (D.I. 21 at 19-20) However, the

---

[8] The court recommends granting Easton's request to take judicial notice of two pages of the 1998 Game Tracker Catalog excerpted from the file history for the '859 patent because they are public record. (D.I. 17 at 11 & n.4; Ex. A) The court may consider "matters of public record," such as prosecution histories. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016); *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000); Fed. R. Evid. 201(b).

[9] The remaining three models of AFC arrow shafts include: (1) AFC XL Accel 2300, (2) AFC Pape's Advantage 2400, and (3) AFC Max II 2400. (D.I. 8 at ¶ 48; D.I. 17 at 12-13)

question before the court at the pleadings stage is whether FeraDyne has adequately pleaded the material and noncumulative nature of the remaining three non-disclosed AFC arrow shafts. Here, FeraDyne has not sufficiently pleaded factual allegations to support a reasonable inference that the prior art is material and noncumulative. *See Exergen Corp.*, 575 F.3d at 1329-30; *Wyeth Holdings Corp.*, 2012 WL 600715, at *9-10; *XpertUniverse, Inc. v. Cisco Systems, Inc.*, C.A. No. 09-157-RGA, 868 F. Supp. 2d 376, 383 (D. Del. 2012). Instead, FeraDyne broadly states that the prior art "was material and not cumulative to the information already of record." (D.I. 8 at ¶ 30)

### ii. Analysis of Scienter

Although "knowledge" and "intent may be averred generally, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen Corp.*, 575 F.3d at 1328-29.

FeraDyne's pleading does not include sufficient factual allegations to support a reasonable inference of Mr. Palomaki's knowledge of the '190 patent, the '725 patent, and the Eastman Medallion arrow shafts. Easton argues that FeraDyne improperly relies on allegations upon "information and belief" to support its assertion that Mr. Palomaki had knowledge of the '190 patent, the '725 patent, and Eastman Medallion arrow shafts. (D.I. 17 at 8-10) "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen Corp.*, 575 F.3d at 1330.

10

Here, FeraDyne generally alleges "[u]pon information and belief, . . . Mr. Palomaki and Easton also knew of the following prior art and other prior art but failed to disclose it to the [USPTO]: the '190 Patent, the '725 Patent, Eastman's Medallion Arrow Shafts, and AFC's Arrow Shafts." (D.I. 8 at ¶ 29) However, FeraDyne fails to plead sufficient facts that allow for the reasonable inference that Mr. Palomaki had knowledge of the '190 patent, the '725 patent, and the Eastman Medallion arrow shafts. *See Int'l Bus. Mach. Corp.*, C.A. No. 15-137-LPS-CJB, 2017 WL 1349175, at *9.

FeraDyne argues that pleadings that disclose the names of withheld relevant prior art and disclose acts of alleged fraud are sufficient under Rule 9(b). (D.I. 21 at 9-12) FeraDyne cites *Cordance Corp. v. Amazon.com, Inc.*, C.A. No. 06-491-MPT, 255 F.R.D. 366 (D. Del. 2009) and *Southco, Inc. v. Penn Engineering & Mfg. Corp.*, C.A. No. 10-03-LPS, 768 F. Supp. 715 (D. Del. 2011) to support this argument, but both of these cases are inapposite. (D.I. 21 at 9-11) In *Cordance Corp.*, the court concluded that the defendant had sufficiently pleaded an inequitable conduct counterclaim under Rule 9(b) because defendant pleaded factual allegations that prior art was "reviewed, studied and/or known to the inventors and not disclosed to the PTO." *Cordance Corp.*, 255 F.R.D. at 373. Similarly, the court in *Southco, Inc.* determined that the heightened pleading standard under Rule 9(b) was satisfied when the defendant alleged the patentee's pre-existing knowledge of the fastener depicted in prior art in its inequitable conduct counterclaim. *See Southco, Inc.*, 768 F. Supp. 2d at 723. In the present case, FeraDyne has not analogously pleaded adequate factual allegations to support its general contention that, upon "information and belief," Mr. Palomaki and Easton knew of the '190 patent, the '725 patent, and Eastman Medallion arrow shafts.

Furthermore, FeraDyne alleges "upon information and belief" that Mr. Palomaki knew of and failed to disclose AFC arrow shafts. (D.I. 8 at ¶ 29) However, Easton argues that the Game Tracker Catalog included three of the six arrow shafts that constitute FeraDyne's AFC arrow shaft reference. (D.I. 17 at 13-14) FeraDyne has not alleged adequate facts to give rise to a reasonable inference that Mr. Palomaki had knowledge of the remaining three non-disclosed AFC arrow shafts. Although FeraDyne relies heavily on Mr. Palomaki's title as Vice President of Product Development for Easton, there are no facts that support a reasonable inference that Mr. Palomaki, due to his position, had knowledge of AFC arrow shafts.[10] (D.I. 8 at ¶¶ 26, 29, 35; D.I. 21 at 13) Furthermore, FeraDyne's argument means that the court should assume that Mr. Palomaki intentionally and selectively withheld disclosure to the USPTO of three out of the six AFC arrow shafts. However, there are no facts alleged to suggest that if Mr. Palomaki had knowledge of the three AFC arrow shafts disclosed in the 1998 Game Tracker Catalog, he would have knowledge of all six AFC arrow shafts. Viewing all factual allegations in a light most favorable to FeraDyne, there are insufficient factual allegations pleaded to give rise to a reasonable inference of Mr. Palomaki's knowledge of the three undisclosed AFC arrow shafts.

Even if the court were to conclude that FeraDyne had adequately pleaded factual allegations to support Mr. Palomaki's knowledge of AFC arrow shafts, FeraDyne has failed to allege that these three remaining AFC arrow shafts are material and noncumulative, or that Mr. Palomaki acted with the specific intent to deceive the USPTO. FeraDyne provides a conclusory statement that "[t]he information in the prior art concealed by Mr. Palomaki and Easton was

---

[10] FeraDyne opines in its brief that Mr. Palomaki knew of the prior art references "as VP of Marketing" for approximately ten years at the time of his Declaration. (D.I. 21 at 17 n.6) However, FeraDyne's pleading does not allege Mr. Palomaki's tenure or how long he had such knowledge. (D.I. 8 at ¶¶ 25-40)

material and not cumulative to the information already of record." (D.I. 8 at ¶ 30) However, no further explanation or factual allegations are asserted as to how the three remaining AFC arrow shafts are material and noncumulative to the information already of record. *See Exergen Corp.*, 575 F.3d at 1329-30; *Wyeth Holdings Corp.*, 2012 WL 600715, at *9-10; *XpertUniverse, Inc.*, C.A. No. 09-157-RGA, 868 F. Supp. 2d at 383.

Moreover, FeraDyne has failed to adequately plead the factual basis for its claim that Mr. Palomaki acted with the specific intent to deceive the USPTO. FeraDyne alleges:

> Upon information and belief, the information contained in the prior art was withheld by Mr. Palomaki and Easton with the specific intent of deceiving the examiner and the [USPTO] . . . . [U]pon information and belief, Mr. Palomaki and Easton acted with specific intent to deceive the [USPTO]. Upon information and belief, Mr. Palomaki and Easton engaged in a pattern of lack of candor, including repeatedly making factual misrepresentations to the [USPTO] contrary to true information they had in their files. Mr. Palomaki and Easton thus engaged in inequitable conduct and violated their duty of disclosure.

(D.I. 8 at ¶ 31, 39) These allegations do not allow the court to reasonably infer Mr. Palomaki had the requisite specific intent to deceive the USPTO.[11] "To meet the threshold level of deceptive intent required to sufficiently plead inequitable conduct, the pleading must 'contain specific factual allegations' showing that a specific individual with knowledge of the material information 'decided to deliberately withhold it from the relevant examiner.'" *Invista N. Am. S.A.R.L. v. M&G USA Corp.*, C.A. No. 11-1007-SLR-CJB, 2013 U.S. Dist. LEXIS 77685, at *38 (D. Del. May 3, 2013) (quoting *Exergen Corp.*, 575 F.3d at 1331). Furthermore, "intent cannot be solely inferred from materiality." *Id.* (quoting *Cellectis S.A. v. Precision Biosciences*, 883 F. Supp. 2d 526, 534 (D. Del. 2012)). Here, FeraDyne's general statements upon information and belief alone are insufficient to adequately plead Mr. Palomaki's specific intent to deceive, as they

---

[11] Such allegations leave for speculation what misrepresentations were made "repeatedly" and what "files" contain contradictory "true information." (D.I. 8 at ¶ 39)

do not set forth any factual allegations in support of this contention. *See Exergen Corp.*, 575 F.3d at 1330-31; *XpertUniverse, Inc.*, C.A. No. 09-157-RGA, 868 F. Supp. 2d at 381-82.

Finally, FeraDyne alleges that "[a]t all material times during the patent prosecution process, Mr. Palomaki and Easton knew of Easton's A/C/C Arrow Shafts *and* the 1991 Lancaster Archery Supply Catalog that marketed Easton's A/C/C Arrow Shafts, but affirmatively withheld this prior art information from the examiner and from the [USPTO]." (D.I. 8 at ¶ 28) (emphasis added) Therefore, FeraDyne alleges that Mr. Palomaki knew of and withheld *both* the Easton arrow shafts and the Supply Catalog. However, FeraDyne also alleges that "the only information regarding Easton's A/C/C Arrow Shafts that Mr. Palomaki and Easton disclosed to the examiner and the [USPTO] were part of an Easton catalog dated 2004, which post-dated the priority date for the Asserted Patents and did not reference the 110 grain and 125 grain[12] broadhead points that were marketed in the 1991 Lancaster Archery Supply Catalog."[13] (D.I. 8 at ¶ 36) Although FeraDyne has adequately alleged that Mr. Palomaki, as Vice President of Product Development for Easton, knew of Easton arrow shafts, its acknowledgement of their disclosure to the USPTO contradicts its earlier assertion that Easton withheld information regarding Easton arrow shafts. (D.I. 8 at ¶¶ 26, 28, 33-34, 36)

Moreover, FeraDyne fails to factually support its assertion that Mr. Palomaki knew of the Supply Catalog. (D.I. 17 at 10 n.3; D.I. 8 at ¶ 28) Although FeraDyne alleges that Easton arrow shafts were marketed in the Supply Catalog, it does not necessarily follow from this factual allegation alone that Mr. Palomaki had knowledge of the Supply Catalog and the descriptions of

---

[12] "Grain" refers to a unit of measurement of weight. *Grain*, ENCYCLOPEDIA BRITANNICA, https://www.britannica.com/science/grain-unit-of-weight (last visited Apr. 5, 2019).
[13] FeraDyne avers in its pleading that "Easton's A/C/C 3-18/560 Arrow Shaft may fit internal components and has an outside diameter of .245 inches, a spine measurement of .560 inches, and a weight of approximately 226 grains." (D.I. 8 at ¶ 34)

Easton arrow shafts as written in the Supply Catalog. FeraDyne's pleading is ambiguous, even when cast in the light most favorable to it, because it is unclear whether FeraDyne is asserting that Mr. Palomaki failed to disclose the Supply Catalog arrow shaft descriptions and/or the Easton A/C/C arrow shafts. Therefore, FeraDyne's pleading does not include sufficient factual allegations to support a reasonable inference that Mr. Palomaki's knowledge of the Supply Catalog was intentionally withheld from the USPTO.

Even if the court were to determine that FeraDyne has adequately pleaded factual allegations in support of its assertion that Mr. Palomaki knew of Easton arrow shafts and the Supply Catalog, FeraDyne still has not pleaded adequate factual allegations to support a reasonable inference that Mr. Palomaki had the specific intent to deceive the USPTO. FeraDyne generally alleges "upon information and belief" that "the information contained in the prior art was withheld by Mr. Palomaki and Easton with the specific intent of deceiving the examiner and the [USPTO]." (D.I. 8 at ¶ 31) This general allegation does not allow the court to reasonably infer Mr. Palomaki had the requisite knowledge and intent to deceive the USPTO. *See Invista N. Am. S.A.R.L. v. M&G USA Corp.*, C.A. No. 11-1007-SLR-CJB, 2013 U.S. Dist. LEXIS 77685, at *38 (quoting *Exergen Corp.*, 575 F.3d at 1331); *XpertUniverse Inc.*, C.A. No. 09-157-RGA, 868 F. Supp. 2d at 381-82. Accordingly, the court recommends granting Easton's motion for judgment on the pleadings.

### b. Motion to Strike

The court recommends granting Easton's motion to strike because FeraDyne's affirmative defense for inequitable conduct fails to meet the pleading standard under Rule 9(b). Because both an affirmative defense and a counterclaim asserting inequitable conduct must meet the particularity requirements dictated by Rule 9(b), as FeraDyne acknowledges in its brief, the "counterclaim and affirmative defense for inequitable conduct rise or fall together." *Senju Pharm. Co.*, 921 F. Supp. 2d at 306. (*See also* D.I. 21 at 7-8) Therefore, the court recommends granting Easton's motion to strike.

## V. CONCLUSION

For the foregoing reasons, the court recommends granting plaintiff's motion for judgment on the pleadings and motion to strike. (C.A. No. 18-1222, D.I. 16)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: April 8, 2019

Sherry R. Fallon
United States Magistrate Judge